**Reno ANTONIOLI**

v.

**LEHIGH COAL AND NAVIGATION COMPANY, Lehigh & New England Railroad, Lehigh & New England Railway, and the Central Railroad Company of New Jersey.**

**Civ. A. No. 68–244.**

United States District Court
E. D. Pennsylvania.

June 6, 1969.

Lawrence J. Richette, Philadelphia, Pa., for plaintiff.

Miles W. Kirkpatrick and Warren M. Laddon, Philadelphia, Pa., for defendants, Lehigh and New England Railroad and Central Railroad Co. of N. J.

## OPINION

JOSEPH S. LORD, III, District Judge.

In Counts I and II of the complaint in this action, plaintiff represents two classes of railroad workers seeking to recover the balance of what they allege to be the proper severance payments and displacement allowances due them under an Order of the Interstate Commerce Commission ("ICC"), Finance Docket No. 21155, September 26, 1961. That Order permitted the Lehigh & New England Railway ("Railway"), a newly-formed subsidiary of the Central Railroad of New Jersey ("Central"), to acquire the assets of the Lehigh & New England Railroad ("Railroad"), a subsidiary of the Lehigh Coal & Navigation Company. Because some railroad trackage was to be abandoned, the ICC required the surviving carriers, who agreed, to abide by certain conditions for the protection of employes to be displaced by the abandonment and sale.

The four defendants have answered Counts I and II of the complaint, and those Counts have been the subject of preliminary motions. Antonioli v. Lehigh Coal & Navigation Co., Civil No. 68–2444 (E.D.Pa., filed March 6, 1969).

Plaintiff has now added a third Count to his complaint seeking relief against two of the defendant carriers, Central and Railway. In Count III, plaintiff represents a class of railroad employes retired during the period from June 30, 1962 to October 31, 1965. The claim of this class has been the subject of prior litigation: Roberts v. Lehigh & N. E. Ry., 211 F.Supp. 379 (E.D.Pa., 1962), aff'd, 323 F.2d 219 (C.A. 3, 1963); Clemens v. Central R. R. of N. J., 264 F.Supp. 551 (E.D.Pa., 1967), rev'd, 399 F.2d 825 (C.A. 3, 1968), cert. den., 393 U.S. 1023, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969). The relief sought is a court order directing the defendant carriers to invoke a special adjustment board under section 153 Second of the Railway Labor Act, 45 U.S.C.A. § 153 Second (Supp. 1969), to resolve the dispute which plaintiff alleges exists concerning the application of the provisions of the ICC Order.

The defendants have filed several motions in opposition to Count III, which we will consider seriatim. Their first argument is that Count III should be stricken since "The purported amendment constitutes a totally different claim and should not be joined to the complaint." Were we to treat the addition of Count III as an amendment under Rule 15(a) F.R.Civ.P., it is true that the plaintiff has not sought leave of court or the written consent of the adverse party as that Rule requires. Defendants point this out, but do not "press it."

However, we agree with plaintiff that Count III does not constitute an amendment to existing allegations under Rule 15(a). Neither is it a supplemental pleading under Rule 15(d) since it does not

> "[set] forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."

Defendants' motion to strike is evidently directed to the apparent misjoinder of Count III to Counts I and II. It is clear that under Rule 18(a), F.R.Civ.P., plaintiff "may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as he has against an opposing party." Count III is properly joined. 3 Moore Federal Practice ¶ 18.04[3–2]. Defendants' motion to strike is Denied.

Defendants also move for dismissal of Count III for failure to state a claim upon which relief can be granted. F.R. Civ.P. 12(b) (6). This motion raises the question whether this plaintiff has standing to invoke section 153 Second of the Railway Labor Act.

■ The defendants do not argue, nor could they successfully, that the law of the case precludes the relief which the plaintiff seeks. The earlier decisions on the plaintiff's claim require him to seek relief before the National Railroad Adjustment Board. Roberts v. Lehigh & N. E. Ry., 323 F.2d 219 (1963); Clemens v. Central R. R., 399 F.2d 825 (C.A. 3, 1968), *cert. den.* 393 U.S. 1023, 89 S. Ct. 633 (1969). These cases clearly do not preclude invocation of a board which was created by Congress for the express purpose of making efficacious the arbitration of grievances which were, in some cases, subject to delays of up to seven and one-half years before they were adjudicated by the National Railroad Adjustment Board. U.S. Code Cong. & Admin. News, 2285, 2286 (1966). If plaintiff can otherwise show that he is entitled to relief, nothing in the prior adjudications of his claim prevent him from substituting the relief he seeks for a National Board which the Supreme Court has recently noticed still contains delays averaging five years. Glover v. St. Louis-San Francisco Ry., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519, 522 (1969).

Preliminarily, the defendants object to the failure to allege in Count III which parts of the retirement agreements are valid, or which parts of the agreements require interpretation by the special adjustment board. While there is no specific allegation on these matters, it is pretty clear to us from the pleading of the extensive prior litigation between these parties what plaintiff seeks and why. Should defendants at this stage be unclear about what the plaintiff claims, they are free to seek a more definite statement under F.R.Civ.P. 12(e).

■ Turning to the merits of the 12(b) (6) motion, the defendants argue that a special board of adjustment is not available to individual employes absent a union's concurrence in their desire to invoke one. This argument is supported both by the language of the section and

the Senate Report on the 1966 amendments which added the provision for special adjustment boards. Section 153 Second provides that:

"If written request is made upon any individual carrier *by the representative of any craft or class of employees* of such carrier for the establishment of a special board of adjustment to resolve disputes otherwise referable to the Adjustment Board, * * * or if any carrier makes such a request *upon any such representative,* the carrier *or the representative* upon whom such a request is made shall join in an agreement establishing such a board within thirty days from the date such request is made. The cases which may be considered by such board shall be defined in the agreement establishing it. Such board shall consist of one person designated by the carrier *and one person designated by the representative of the employees.* * * * *"* Railway Labor Act, 45 U.S.C.A. § 153 Second (Supp. 1969). (Emphasis added.)

This section contrasts markedly with section 153 First, which describes the procedure for invoking the National Railroad Adjustment Board, which reads as follows:

"The disputes between *an employee* or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, * * * shall be handled in the usual manner * * * but, failing to reach an adjustment in this manner, *the disputes may be referred by petition of the parties or by either party* to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." 45 U.S.C.A. § 153 First (i) (Supp. 1969) (Emphasis added)

The section which follows also refers to giving notice "to the employee or employees." 45 U.S.C.A. § 153 First (i) Supp.1969). Other sections of the Act,

namely, 45 U.S.C.A. § 152 Second, Third, Fourth and Sixth, (Supp.1969), assert, and the Supreme Court has affirmed, that the *individual* employe has a right to participate in the resolution of his grievance before the National Railroad Adjustment Board. Elgin, Joliet & Eastern Ry. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945).

The different wording found in section 153 Second is not accidental. By requiring a union to represent anyone seeking a special board, the 1966 amendment to section 153 Second sought to prevent frivolous claims from being tendered by individual employes to multitudinous special boards. The Senate Report on the amendments makes this clear.

"When either party requests a special adjustment board, the [Committee on Labor and Public Welfare] contemplates that a number of disputes will be referred to that board. The committee believes it would only result in the proliferation of special boards to request a special board for each claim presented by an employee.

"Carrier witnesses testified that many of the claims presented by employees and disputes referred to the Board are frivolous or at least without merit. Although the committee is not prejudging any claims, it believes that claims should be carefully screened by the party submitting it [sic]. The committee believes that every claim should be carefully considered by both the carrier and employee representative in an attempt to resolve the dispute before submission to the Board." U.S. Code Cong. & Admin. News, pp. 2286–2287 (1966).

Since plaintiff is not such an "employee representative" within the meaning of section 153 Second, he is not a proper person to seek the convening of a special board. Accordingly, he does not have standing to seek affirmative relief from this court. We do not consider this result to work entirely to the plaintiff's disadvantage.

"* * * The peculiar structure of special adjustment boards makes it imperative that its membership be proper since interested parties are given the power of decision. * * *" Brotherhood of Locomotive Eng. v. Denver & R. G. W. R. R., 290 F.Supp. 612, 618 (D.Colo., 1968).

Since plaintiff alleges collusion between his authorized collective bargaining representative and the carrier defendants, a special board selected by them might not be entirely sympathetic to plaintiff's claim.

Further, it is possible that plaintiff can persuade another union to represent his interests in the prosecution of this grievance, since a recent decision indicates that another union, one other than the authorized collective bargaining agent for the craft in which he was employed when the claim arose, may represent his claim before a special board of adjustment. Brotherhood of Locomotive Eng. v. Denver & R. G. W. R. R., 290 F. Supp. 612, 619–620 (D.Colo., 1968).

We reach our conclusion somewhat reluctantly, since the plaintiff is relegated, for the moment at least, to a remedy which offers little hope of relief in the near future. However, we think it is clear that plaintiff's relief lies with the National Railroad Adjustment Board or its alter ego, a special board of adjustment. Since we have concluded that plaintiff is not a proper party to invoke section 153 Second of the Railway Labor Act, the defendants' motion to dismiss Count III of the complaint for failure to state a claim upon which relief can be granted is hereby granted.